NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER YACKEL,<br>           Plaintiff,<br>v.<br><br>JUN CHOI, MAYOR OF THE TOWNSHIP OF EDISON, in his individual and official capacity, NORMAN JENSEN, CHIEF TOWNSHIP OF EDISON DEPARTMENT OF PUBLIC SAFETY - DIVISION OF FIRE, in his individual and official capacity, TOWNSHIP OF EDISON,<br>           Defendants. | Civ. Action No. 09-2924 (KSH)<br><br><br><br><br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.   INTRODUCTION**

    Plaintiff Peter Yackel is a firefighter in the Township of Edison and a member of the International Association of Firefighters Local 1197.  He brings this 42 U.S.C. § 1983 action against Mayor Jun Choi, Norman Jensen, and Edison (collectively, "defendants"), alleging violations of his First and Fourteenth Amendment rights after he was suspended for five days for violating a policy prohibiting Edison employees from engaging in political activities while performing their public duties.

    This case comes before the Court by way of defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, motion for summary judgment pursuant to FRCP 56(c).  The Court's federal question jurisdiction is undisputed and proper

pursuant to 28 U.S.C. § 1331.  Venue is also undisputed and proper pursuant to 28 U.S.C. § 1391(b).

## II. STANDARD OF REVIEW

FRCP 12(b)(6) states that when "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." *See also Camp v. Brennan*, 219 F.3d 279, 280 (3d Cir. 2000) (stating that consideration of matters beyond the complaint converts a motion to dismiss into a motion for summary judgment).  FRCP 56(c) entitles a party to summary judgment when the district court judge concludes "that there is no genuine issue of material fact and that the party is entitled to judgment as a matter of law."  The moving party bears the burden of proving there is no material issue of fact in dispute. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "If there are no issues that require a trial, then judgment as a matter of law is appropriate." *Honeywell Sav. & Ownership Plan v. Jicha*, 2010 U.S. Dist. LEXIS 4670, at *11 (D.N.J. 2010) (Debevoise, J.).

The parties do not dispute that this Court can make a judgment on the pleadings at this time.  Indeed, they anticipated such a judgment and presented supplemental materials that are "explicitly relied upon in the complaint," and "undisputedly authentic." *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).  The movant's papers include Edison's Employee Handbook ("Handbook") and its accompanying memorandum; the collective bargaining agreement ("CBA") between Local 1197 and Edison; the affidavit of Jensen, the Chief of Edison's Department of Public Safety, Fire Division; and a photograph of plaintiff's truck parked in the fire station parking lot, displaying the sign plaintiff constructed and fixed onto the bed of the truck.  Plaintiff provided the Court with the arbitration award opinion that

2

memorialized Local 1197 and Edison's CBA; plaintiff's affidavit; and the affidavits of two Edison firefighters, Douglas Kosup and Scott Law.

### III. STATEMENT OF FACTS

Plaintiff is an Edison firefighter and belongs to Local 1197, a union for firefighters. (Compl. ¶ 5; Opp'n. Br. 1.) The following facts, which are essentially undisputed, are excerpted from the complaint:

> 9. On June 1, 2009, at approximately 7:30 a.m., Plaintiff arrived for his tour of duty at the Township of Edison Fire Station #3 and parked his pickup truck in the parking lot of Fire Station #3 as he always does.
>
> 10. Displayed in the bed of Plaintiff's pickup truck was a piece of posterboard which read: "CHOI LIES! SAVE PUBLIC SAFETY IN EDISON." The posterboard was supported by pieces of wood so as to make it visible.
>
> 11. The sign referred to Plaintiff's belief that during his term as Mayor, Defendant Choi failed to uphold his campaign pledge to protect public safety in Edison. Defendant Choi was seeking reelection in the Mayoral primary for the Defendant Township of Edison, which was to be held on the following day, June 2, 2009. The issue of protecting public safety in Edison was of significant importance in the campaign. In light of the upcoming election, Plaintiff sought to inform the public of his view on Defendant Choi's record on public safety.
>
> 12. At approximately 7:30 p.m. . . . Battalion Chief Robert LaCour ("LaCour") approached Plaintiff at the [Fire Station] and stated to Plaintiff that Defendant Jensen wanted Plaintiff's truck moved and Plaintiff complied.
>
> 13. On June 3, 2009, Battalion Chief Frank Imbriacco delivered to Plaintiff's personal residence a letter dated June 3, 2009. The letter bore Defendant Township of Edison and Defendant Choi's names on the letterhead, and was signed by Defendant Jensen. The letter stated that Plaintiff was being reprimanded and assessed a five (5) day suspension as a result of Plaintiff engaging in inappropriate political activities while on duty

(Compl. ¶¶ 9-13.)

3

Defendants provided the Court with a photograph of the sign, as it was in plaintiff's truck, along with its moving brief. (*See* attached, Exh. 1.) The photograph is consistent with the description given in the reply brief, where the sign is described as five feet tall with four inch letters, visible from afar and prominently displayed in the bed of plaintiff's truck. (Reply Br. 3.) The reply brief also points out that plaintiff put the sign in his truck on the day before the Edison mayoral primary election. (*Id.* 3.)

On June 16, 2009, 15 days after the incident, and 13 days after his suspension from work, plaintiff filed a complaint in federal court, alleging violations of his First Amendment freedom of speech and Fourteenth Amendment procedural due process rights, naming Edison and individual Edison employees as defendants. [D.E. 1.] Choi is the Mayor of Edison, whom plaintiff describes as "the highest elected official," and also serves as the Director of Edison's Department of Safety. (*Id.* ¶ 6.) Jensen is the Chief of Edison's Department of Public Safety, Division of Fire. (*Id.* ¶ 7.) According to the complaint, Choi and Jenson have "final policymaking authority in the area of personnel decisions for Edison's Department of Public Safety - Division of Fire, including the suspension of firefighters." (*Id.* ¶ 15.)

## IV. DISCUSSION

### A. *First Amendment Claim*

Plaintiff bases his First Amendment claim on two grounds. First, he argues that defendants abridged his free speech rights when they suspended him, because he is a member of Local 1197 and subject only to the terms of its CBA, which is silent on the issue of political activity. Second, plaintiff argues that, assuming he is subject to the terms of Edison's Handbook, its prohibition on political speech is unconstitutionally vague. Alternatively, he contends that even if the policy is constitutional, his conduct falls within the purview of First Amendment

4

protection because his speech addressed a "matter of public concern," and under the *Pickering* balancing test, *see infra*, his interests outweigh Edison's to the extent it has a policy regulating political speech.  Initially, the Court must determine whether he is subject only to the CBA or whether, as an employee of Edison, he also is subject to the Handbook, which states:

> Employees have exactly the same right as any other citizen to join political organizations and participate in political activities, as long as they maintain a clear separation between their official responsibilities and their political affiliations.  Employees are prohibited from engaging in political activities while performing their public duties and from using Township of Edison time, supplies or equipment in any political activity . . . .

(Empl. Hand. 18.)

A memorandum dated March 19, 2008 accompanied the Handbook when it was distributed to "All Permanent Township of Edison Employees." (Revised Hand. Memo 1.)  The memorandum reads, in pertinent part: "As indicated in various locations within the handbook, it is not meant to supersede any employee's respective bargaining agreement, but is an advisement of Township policies that are not addressed in those agreements." (*Id.*)  The memo also discusses how the revised Handbook affects "non-union employees." (*Id.*)

The memo supports defendants' argument that *all* Township employees are subject to the terms of the Handbook, and that it was intended to supplement, not supersede, their CBAs.  Local 1197's CBA is silent on the issue of political speech, whereas the Handbook provides an express policy.  Plaintiff's argument that he is subject only to the terms of the CBA is unpersuasive.

Plaintiff's next argument is that the Handbook's policy is unconstitutionally vague because it "provides no middle ground on what conduct would be prohibited." (Opp'n. Br. 16.)  He claims Edison tolerated similar activity, alleging that co-workers had political bumper stickers on their cars while parked at work, and were never disciplined. (*Id.*)  "A statute or

5

regulation governing conduct is unconstitutionally vague when 'it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess as to its meaning and differ as to its application.'" *Rode v. Dellarciprete*, 845 F.2d 1195, 1199 (3d Cir. 1988) (quoting *Aiello v. City of Wilmington, Delaware*, 623 F.2d 845, 850 (3d Cir. 1980)). Vagueness is "especially problematic when it may 'chill' the exercise of protected first amendment rights." *Rode*, 845 F.2d at 1199.

The fact that firefighters supporting Choi may have been allowed to display bumper stickers on their cars (although plaintiff makes no mention of signs as large as his) does not support his vagueness argument, and it is not persuasive on that point given the clarity of the language in the Handbook and what plaintiff did in this case. Plaintiff parked his truck on Edison property with a five foot sign that said: "CHOI LIES! SAVE PUBLIC SAFETY IN EDISON." (*See* attached, Exh. 1.) A person of ordinary intelligence would not have to guess whether displaying a sign of that size in such a noticeable location in an employee parking lot during the workday constitutes "political activity while performing . . . public duties."

More critically, plaintiff's argument that other cars bore bumper stickers has no evidentiary support and, as a result, the Court will not consider it. *See Tingley-Kelley v. Trs. of the Univ. of Pa.*, 2010 U.S. Dist. LEXIS 1083, at *43-44 (E.D. Pa. 2010) (in opposing a motion for summary judgment, plaintiff's "mere belief, without any record evidence . . . does not create a genuine issue of material fact"); *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990) ("unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment"). The Court has reviewed plaintiff's submitted affidavits, which include his own and those of two firefighters, and it appears that the first and only time he makes this point is in his opposition brief. The pattern of enforcement of the policy is not the issue relevant to

6

plaintiff's vagueness claim. What plaintiff did falls within the ambit of political activity, and the Court rejects his vagueness argument.

Moving on to plaintiff's general claim that the Handbook's policy is unconstitutional because it unduly abridges his constitutional rights, the facts establish that plaintiff prominently displayed the sign in the fire station's parking lot, a location easily classified as a nonpublic forum—"public property which is not by tradition or designation a forum for public communication." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). It is well-settled that "access to a nonpublic forum may be restricted by government regulation as long as the regulation 'is reasonable and not an effort to suppress expression merely because officials oppose the speaker's view.'" *Bd. of Airport Comm'rs of L.A. v. Jews for Jesus, Inc.*, 482 U.S. 569, 573 (1987) (quoting *Perry Ed. Ass'n*, 460 U.S. at 46).

Government facilities that "are not committed to public communicative activity may regulate speech by the general public so long as that regulation is reasonable and not based on an opposition to a particular viewpoint." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 279 (3d Cir. 2004). A regulation will be upheld if the "variety and type of alternative modes of access" to expressing political speech "compare favorably" with other nonpublic forum cases where restrictions have been upheld. *Perry Educ. Ass'n*, 460 U.S. at 53-54 (citing *Greer v. Spock*, 424 U.S. 828, 839 (1975) (servicemen free to attend political rallies off base); *Pell v. Procunier*, 417 U.S. 817, 827-828 (1974) (prison inmates may communication with media by mail and through visitors)). The Supreme Court has held that regulations restricting the time, place, and manner of protected speech are protected if they are content-neutral, are narrowly tailored to meet a significant government interest, and leave open ample alternative means of communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Edison's policy is content-neutral because it does not distinguish on the basis of the speaker's message, and leaves open alternative means of communication because it only bans employees from political speech while they are on-duty and/or from using Township of Edison time, supplies, or equipment in any political activity. Insofar as Edison must show a significant government interest, the policy as applied to plaintiff's activity promotes the appearance of political neutrality. If Edison were to allow its employees to engage in political activities while on-duty, or permitted Edison property to be used in connection with employees' political activity, its citizens may infer that Edison endorsed the employees' speech. Edison has a significant interest in preventing this type of confusion.

As a firefighter, plaintiff is entitled to the constitutional guarantees afforded to public employees, who have, under well-settled law, the "constitutional right to speak on matters of public concern without fear of retaliation." *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir. 2001). Court decisions "have sought both to promote the individual and societal interests that are served when employees speak as citizens on matters of public concern and to respect the needs of government employers attempting to perform their important public functions." *Garcetti v. Ceballos*, 547 U.S. 410, 420 (2006) (citing *Rankin v. McPherson*, 438 U.S. 378, 384 (1987)). The underlying premise of such cases has been that "while the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" *Garcetti*, 547 U.S. at 420 (quoting *Connick v. Myers*, 461 U.S. 138, 154 (1983)).

In balancing the rights of public employees against the interests of their public employers, courts require a plaintiff asserting a First Amendment claim to establish three elements: (1) the conduct at issue was constitutionally protected; (2) there was retaliatory action

sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Baldassare*, 250 F.3d at 194-95; *Connick v. Myers*, 461 U.S. 138 (1983). The parties do not dispute the second or third element, so the Court considers the first, and that is solely a question of law. *Miller v. Clinton County*, 544 F.3d 542, 548 (3d Cir. 2008). To qualify as protected speech, the speech must "implicate a matter of public concern and must outweigh the employer's interest in the effective operations of its public services." *Id.* Plaintiff, then, must allege that he spoke primarily in his role as a citizen of Edison on a matter of public concern, rather than as an Edison employee addressing a matter of personal interest. *Id.* (citing *Connick v. Myers*, 461 U.S. 138 (1983)).

The Court is satisfied that plaintiff's speech meets the public concern requirement sufficient to bring it within the purview of First Amendment protection. The Court does not have to determine whether plaintiff was motivated primarily as a citizen of Edison, or primarily as a member of Local 1127—and it is worth noting that these two roles are not mutually exclusive.[1] The speech addresses the upcoming election, which naturally qualifies as public concern, and plaintiff alleges in the complaint that he believed Choi did not live up to his prior campaign promise of protecting public safety in Edison.

Now the Court reaches the *Pickering* balancing test. *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). Plaintiff must demonstrate that his interests in commenting upon a matter of public concern outweigh Edison's interests in "promoting efficiency of the public services it provides through its employees.'" *Azzaro v. County of Allegheny*, 110 F.3d 968, 980 (3d Cir. 1997)

---

[1] Courts in this district have held that matters involving union-related activity implicate public concern. *See e.g.*, *Bradshaw v. Twp. Of Middleton*, 296 F. Supp. 2d 526, 545-46 (D.N.J. 2003) (Cooper, J.) (stating that the right of association "extends to union-related activity").

9

(citations omitted); *Baldassare*, 250 F.3d at 195. The Court finds that the *Pickering* balancing test tips in Edison's favor. Plaintiff was not disciplined for posting the sign on his truck. He was disciplined because he parked his truck, on which he had mounted a sign taking a strong position about the upcoming election, in the municipal employee parking lot during his workday. Edison's interest in regulating the time, place, and manner of municipal employees' political speech to ensure that citizens do not conclude that Edison endorses its employees' political beliefs outweighs plaintiff's interest in expressing his viewpoint about Choi in the manner he chose that day. The Court grants defendants' motion for summary judgment as a matter of law on Count I of the complaint.

### B. Procedural Due Process Claim

Plaintiff claims his due process rights were violated because he was "denied the opportunity to be heard to contest his suspension." (Compl. ¶ 27.) Defendants argue that "[s]ince plaintiff has adequate post-deprivation remedies and has not exhausted them, as a matter of law, no due process violation could have occurred." (Br. 8.) They point to the Handbook, which defines "minor discipline" and an employee's right to object. "Minor discipline includes a formal, written reprimand or a [fine or suspension] of five working days or less." (Empl. Hand. 20.) The grievance protocol follows: "Employees who object to the term of the conditions or the discipline are entitled to a hearing under the applicable grievance procedure. In every case involving employee discipline, employees will be provided with an opportunity to respond to charges whether verbally or in writing." (*Id.*) The Handbook provides a non-exhaustive bullet-point list of reasons for which an employee could be disciplined, one being: "Violation of Township of Edison policies, procedures and regulations." (*Id.* 18-20.)

In his opposition brief, plaintiff points to an entirely different document for the Court to consider—the CBA between Edison and Local 1197. Plaintiff's attorney submitted the April 7th, 2008 Interest Arbitration Award that memorialized the CBA with the moving brief. Plaintiff asserts that "despite [t]he Township's submission stak[ing] out its desire to have the members of Local 1197 bound to the Township Employee Handbook[,] . . . the Arbitrator did not include the [Handbook's] conditions as part of the CBA, either by reference or explicitly set forth in the CBA." (Opp'n. Br. 6.) The Court is unable to find any support in the record for plaintiff's claim that the arbitrator expressly refused to incorporate the Handbook into the CBA.

The record reveals that plaintiff sued in federal court only 13 days after he was suspended. As defendants recite in their brief, "At no time prior to this action has the Plaintiff filed a grievance, objected to the suspension or expressed displeasure with either the suspension or the mechanics of the [CBA]. Plaintiff has failed to utilize any of the administrative or procedural rights afforded to him." (Br. 9.) Plaintiff offers two reasons as to why he did not file a grievance following his suspension: the "ambiguous language of the CBA in regards to the grievance procedure, and the past practices of the Township and Defendant Jensen when members of Local 1197 have been suspended[.]" (Opp'n. Br. 18.) Plaintiff states that he did in fact "pursue an appeal of his suspension at the Public Employee Retaliations Commission ("PERC") once it became apparent that the Township and Defendant Jensen were not going to initiate the first step of the grievance procedure." (*Id.*) He contends that "[b]ased upon how the parties had operated previously," he believed Jensen would contact him to "informally resolve the suspension. (*Id.* 19.)

But the Handbook, which the Court has determined applies to plaintiff, lays out a clear policy and identifies the steps to take. Moreover, plaintiff argues on the one hand that the CBA

11

is the only written document applicable to Edison firefighters in Local 1197, but then, on the other hand, he defends his failure to follow its grievance procedure on the ground that its terms are ambiguous and prior practice at the firehouse indicated that the dispute would be resolved informally. As to prior practice, plaintiff supports this argument with two affidavits of Edison firefighters, which refer to Edison's practice of granting a firefighter a hearing prior to suspension. Both affiants state that "no firefighter has ever been suspended or terminated without a hearing prior to the suspension taking effect." (Kosup Aff. ¶ 1; Law Aff. ¶ 1.) But plaintiff *was* afforded an opportunity to be heard—he acknowledges in his affidavit that his suspension letter instructed him to appear at Jensen's office and that he did not attend the meeting because he was "on vacation that day." (Yackel Aff. ¶ 2.) According to plaintiff, he never tried to reschedule the meeting because it was his belief that Jensen would contact him. In a matter of this importance, plaintiff's decision not to attend the meeting and failure to reschedule, and his expectation that his superior would reach out to him instead, do not amount to circumstances that support a constitutional deprivation at the hands of his employer.

The Court concludes plaintiff has failed to state a Fourteenth Amendment claim and grants summary judgment in defendants' favor on Count II of the complaint.

### V. CONCLUSION

The Court concludes that the five-day suspension imposed on Yackel was neither an unconstitutional discipline nor a deprivation of his rights of free speech. Defendants' motion for summary judgment is **granted**, and the complaint is dismissed. An appropriate order will be entered.

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

# EXHIBIT 1

